# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

|                           |     |                         |
|---------------------------|-----|-------------------------|
| BARRY D. MATHIAS,         | )   |                         |
|                           | )   |                         |
|     Plaintiff, | )   |                         |
|                           | )   |                         |
| VS.                       | )   | No. 1:16-cv-01091-JDT-cgc |
|                           | )   |                         |
| PAUL THOMAS, ET AL.,      | )   |                         |
|                           | )   |                         |
|     Defendants. | )   |                         |

---

## ORDER PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT PROCESS BE ISSUED AND SERVED ON DEFENDANT SAFFELL

---

On May 5, 2016, Barry D. Mathias, who currently is incarcerated at the Whiteville Correctional Facility in Whiteville, Tennessee, and three other Plaintiffs filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 related to their confinement at the Gibson County Correctional Complex (GCCC). (ECF No. 1.) Each Plaintiff separately applied for leave to proceed *in forma pauperis*. (ECF Nos. 2, 3, 4 & 5.) Plaintiffs amended the complaint on July 5, 2016. (ECF No. 8.) Plaintiff Mathias subsequently informed that Court that he was no longer incarcerated and provided his new address. (ECF No. 22.) On March 17, 2017, the Court issued an order severing the Plaintiff's claims, leaving Mathias as the sole Plaintiff in this case, and ordering Mathias to file a non-prisoner *in forma pauperis* affidavit or pay the full $400 civil filing fee under 28 U.S.C. §§ 1914(a) and (b). (ECF No. 26.)

On March 29, 2017, Mathias notified that the Court that he was again incarcerated at the GCCC and, on April 3, 2017, submitted a motion to proceed *in forma pauperis*. (ECF Nos. 28 & 30.) The Court granted his motion and assessed the civil filing fee pursuant to

the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b).  (ECF No. 31.)  Mathias again amended the complaint on May 10, 2017, superseding the original and first amended complaints.  (ECF No. 32.)  On January 22, 2018, Mathias moved to supplement the pleadings.  (ECF No. 37.)  The Court granted the motion on September 25, 2018.  (ECF No. 40.)  The Clerk shall record the Defendants as Paul Thomas, the Gibson County Sheriff; David Saffell; Tom Witherspoon, Mayor of Gibson County; Heather Cotham, a nurse; and Christie Combs.

Mathias seeks "nominal, compensatory, and punitive damages from the defendants" in the amount of one million dollars and sues each Defendant in his or her individual and official capacities.  (ECF No. 32 at PageID 255.)[1]

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest

---

[1] Mathias also requests an injunction "to prevent any and all retaliation from the defendants or jail staff for the filing of this lawsuit" and demands a jury, should his complaint survive screening.  (ECF No. 32 at PageID 256-57.)  Because he is no longer at GCCC, his request for an injunction is moot.  *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Mathias filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Mathias raises numerous claims regarding his previous confinement at GCCC. The Court will separately discuss the facts pertaining to each claim or set of claims and then analyze the relevant law for the claim or claims.

*Official Capacity Claims*

Mathias sues the Defendants in their official capacities. The Court construes those claims as against Gibson County. When a § 1983 claim is made against a municipality or county, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality or county is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually

responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Mathias fails to allege a policy or custom in place at GCCC that is depriving him of a constitutionally protected right. He therefore fails to state a claim against any Defendant in his or her official capacity. The Court will note in the following discussion of the individual-capacity claims any instance where Mathias attempts to describe a policy in place related to his claim and why his allegations do not suffice to state a claim.

### Individual Claims Against Defendants Thomas and Witherspoon

Mathias does not allege that either Defendant Thomas or Defendant Witherspoon personally acted against him in any way. When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. All claims alleged against these two Defendants in their individual capacities are dismissed.

### Claims Regarding the Denial or Delay of Medication

Mathias first alleges that, when he was first detained at GCCC on February 9, 2016, he brought three bottles of Nexium, a medication to treat his acid reflux, but was denied the medication for two days without justification. (ECF No. 32 at PageID 187-88.) Mathias alleges he "suffered severe pain and agony for the 2 days and 3 nights that he was denied his medication." (*Id.* at PageID 188.) Mathias allegedly again was denied Nexium on March 11 and 12, 2016; instead, he was given Tums tablets to treat his acid reflux. (*Id.* at PageID 189.) After Mathias returned to the GCCC about a year later, on March 8, 2017, the jail nurse (presumably Defendant Cotham) again failed to give him Nexium for several days despite his multiple requests, both in person and on the jail's kiosk. (*Id.* at PageID 191-93.) The nurse responded to Mathias's kiosk

request on March 14, 2017, and told him the Nexium had been ordered; she recommended that he request Tums in the meantime. (*Id.* at PageID 194.) Mathias eventually received the Nexium he had requested. (*Id.*)

Mathias further states he asked his sister to bring him another of his medications, Seroquel, which she allegedly delivered to the jail nurse on March 16, 2017; however, Mathias did not receive the medication. (*Id.* at PageID 194-96.) He used the kiosk to request the Seroquel on March 22, 2017, and the nurse allegedly responded and told Mathias that medication was no longer given at the jail. (*Id.* at PageID 197.) Mathias asserts that the nurse is "not qualified to take away medications or prescribe them" but denied his medication as retaliation against him for his kiosk requests. (*Id.* at PageID 200-01.) Mathias alleges he eventually did receive the Seroquel after telling the nurse he had a pending lawsuit. (*Id.* at PageID 202-03.) He also alleges generally that Defendant Saffell is "conspiring with the medical staff . . . to discontinue prescribing certain medications, namely 'Seroquel.'" (*Id.* at PageID 247.)

Mathias alleges Defendants Saffell and Cotham were deliberately indifferent to his medical conditions. The Court reviews those claims under the Eighth Amendment. The Eighth Amendment prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'. . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth

Amendment." *Id.* at 106.

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298. The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838.

Mathias fails to state a claim under the Eighth Amendment due to any delay in receiving his medications. Although his preferred medication, Nexium, was delayed, in the interim Mathias was given medication to treat his acid reflux in the form of Tums. His dissatisfaction with the adequacy of that treatment is insufficient to state a claim under the Eighth Amendment. *See Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018) ("[W]here medical care is merely inadequate, this Court is generally reluctant to second guess medical judgments." (internal quotation omitted)).

Regarding the denial or delay of the Seroquel, Mathias fails to describe his disorder, explain how Seroquel was used to treat the disorder, or allege that he suffered an actual injury from its delayed receipt. He has therefore failed to allege a serious medical need for Seroquel or that any named Defendant was deliberately indifferent to a substantial risk of serious harm. Nor does Mathias properly allege a claim of retaliation. Mathias does not allege the delay in receiving the Seroquel was because of his pending lawsuit. Instead, he alleges he received Seroquel quickly *after* telling the nurse he had a lawsuit pending. If the nurse acquiesced after learning about the lawsuit, then she could not have been withholding the medication in retaliation for Mathias filing it. *See O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014) (concluding inmate stated claim of retaliation when defendants delayed and eventually discontinued medication because he had filed grievances concerning his medical care).

Mathias also fails to allege a claim for civil conspiracy. A plaintiff may plead a conspiracy claim under § 1983, but he must do so with specificity. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). "[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). This pleading standard for a claim of civil conspiracy is "relatively strict." *Fieger v. Cox*,

524 F.3d 770, 776 (6th Cir. 2008). Mathias's claim fails this standard. He broadly alleges a conspiracy without any material factual support suggesting Defendant Saffell conspired with medical staff to deny Mathias medication.

Nor does Mathias allege any policy in place to deny him medication. Though he alleges generally that Defendant Saffell's actions show a lack of training, Mathias does not assert that GCCC in practice fails to train its employees properly or that there is a policy of denying or delaying medication to inmates. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). His Eighth Amendment claims regarding his medication fail.

### Shakedown of Cell, Retaliation

Mathias next alleges that on July 11, 2016, Defendant Saffell wrote a disciplinary report against him for having a hole in his mattress. (ECF No. 32 at PageID 205.) Defendant Saffell charged Mathias with a Category I offense, which carried a $55 fine. (*Id.*) Mathias successfully contested the charge at a disciplinary hearing and avoided the fine. (*Id.* at PageID 206-08.) He alleges Defendant Saffell fabricated the charge in retaliation for filing this lawsuit in May 2016. (*Id.* at PageID 208-11.) As evidence for his claim of retaliation, Mathias asserts that, before he filed his original complaint, Defendant Saffell moved Mathias to different pods within the jail and, on one occasion, threatened to move Mathias "to rougher pods for filing grievances about not having a shower curtain." (*Id.* at PageID 208-09.)

The Court reviews Mathias's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution."). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken
> against the plaintiff that would deter a person of ordinary firmness from continuing
> to engage in that conduct; and (3) there is a causal connection between elements
> one and two—that is, the adverse action was motivated at least in part by the
> plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus–X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Mathias claims that Defendant Saffell wrongly charged him with a Category I offense in retaliation for filing this lawsuit. Mathias has a right to file his lawsuit, and retaliation against Mathias for filing it would constitute a constitutional violation. *See Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 394. Though the disciplinary charge came two months later, Defendant Saffell allegedly had previously threatened Mathias for filing grievances, which also is protected conduct. *Hill*, 630 F.3d at 472. It is thus plausible Defendant Saffell brought the disciplinary charge at least in part because Mathias had named him in this lawsuit. Construing Mathias's allegations in the light most favorable to him, as the Court must on screening, *see id.* at 476, Mathias has stated a plausible claim of retaliation in violation of the First Amendment against Defendant Saffell.[2]

---

[2] That Mathias successfully challenged the disciplinary charge and avoided the fine does not mean he did not face an adverse action under the second element from *Thaddeus-X*. *See Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) (concluding that risk of sanctions from disciplinary charge, even though inmate was found not guilty, could "deter a person of ordinary firmness from continuing to engage in that conduct").

*Disciplinary Hearing, Denial of Due Process*

Mathias next alleges that Defendant Saffell violated his due-process rights in connection with a disciplinary hearing in March 2016. (ECF No. 32 at PageID 212.) Mathias alleges he received only 24-hours' notice of the hearing and was denied an opportunity to call witnesses, present evidence, and view the factfinder's decision regarding the reasons for the disciplinary action. (*Id.* at PageID 214.) Mathias "received a 3 day visit to I-pod which is the hole" as punishment for the infraction. (*Id.* at PageID 213.)

Relatedly, Mathias alleges that GCCC does not readily make available the rules inmates must follow and the violation of which may lead to disciplinary action. (ECF No. 32 at PageID 238-41.) GCCC had posted only six rules, but other "hidden" rules supposedly were available in the library; however, Mathias states he could not find those additional rules in the library. (*Id.* at PageID 238-39.) Sometime after Mathias filed the original complaint, the Defendants allegedly "issued a new set of 6 rules that also now states that, 'additional rules can be found in the library.'" (*Id.* at PageID 241.) When Mathias complained about this, Defendant Saffell told him the rules would be posted on the kiosk "sometime in the future." (*Id.* at PageID 239.) Mathias claims this policy by GCCC is unconstitutional. (*Id.*)

A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Confinement to punitive segregation, the loss of package privileges, fines, and

restitution generally do not constitute an atypical and significant hardship in the context of prison life.  *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).

The loss of good time or sentence credits imposed as punishment for a disciplinary infraction, however, generally will implicate a liberty interest.  *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Guile v. Ball*, 521 F. App'x 542, 544 (6th Cir. 2013).  In *Wolff*, the Supreme Court set out the minimum due process that must be afforded a prisoner who is charged with a disciplinary offense that may result in the loss of good time or sentence credits.  In those instances, due process requires the prisoner be provided: (i) written notice of the charges at least twenty-four hours prior to the hearing, 418 U.S. at 563-64; (ii) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," *id.* at 566; and (iii) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action, *id.* at 564.

Mathias complains that he was denied proper procedure before and during his disciplinary hearing.  Though being denied the right to call witnesses or view the factfinder's decision could be problematic under *Wolff*, 418 U.S. at 558, Mathias does not allege that his sentence or good-time credits were at risk or affected by the outcome of the hearing.  Moreover, three days in the "hole" does not constitute a significant and atypical hardship for prisoners.  *Johnson v. Sword*, No. 3:15-CV-245-PLR-CCS, 2015 WL 4561589, at *4 (E.D. Tenn. July 29, 2015).  As to the alleged lack of notice of the rules, Mathias does not allege any actual injury.  He has not faced discipline because of the inadequate notice.  An inmate cannot claim relief from some possible, speculative future injury.  *See Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995) (rejecting due-process claim premised on "speculative injury").  Nor does he allege that the rules are entirely unavailable; he says only that he had difficulty finding them in the library on his two visits there.  There is no due-

process right to better placement of the jail's disciplinary rules.  His allegations do not state a claim under the Fourteenth Amendment.

*Access to Courts*

Mathias generally alleges that the jail has insufficient legal materials to assist him in preparing pleadings and accessing the courts.  (ECF No. at PageID 217-19.)  Mathias is correct that he has a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 822 (citing *Ex parte Hull*, 312 U.S. 546 (1941)).  To have standing to pursue a First Amendment claim that he was denied access to the courts, however, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394.  It is not enough that an inmate establish "that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). He must "go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* (internal citations omitted). Mathias does not allege that the legal resources within the prison restricted his ability to file a complaint, "hindered his efforts" to pursue these claims, or in any way affected his case.

*Claims Regarding Mail*

Mathias next generally alleges GCCC unduly denies prisoners "the right to receive information" because their outgoing mail is reviewed and they are not permitted access to news articles and news programs on television.  (ECF No. 32 at Page ID 220-21.)

Mathias lacks standing to assert claims on behalf of any other inmate than himself.  One of the three elements of standing is that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks, footnote and citations omitted). "In requiring a particular injury, the Court meant that the injury must affect the plaintiff in a personal and individual way." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (internal quotation marks and citation omitted). Unless Mathias suffered an actual injury, he "was not the aggrieved party, [and] he lacks standing" to sue. *Percival v. McGinnis*, 24 F. App'x 243, 246 (6th Cir. 2001). Mathias does not allege that he suffered any actual injury as a result of the GCCC's policies regarding outgoing mail and news sources.

Mathias alleges more specifically that legal mail he received from the Clerk of this Court on May 10, 2016, had been opened before he received it. (ECF No. 32 at PageID 234-35.) He alleges a sergeant not named in this lawsuit delivered the mail to him and that Defendant Saffell, as of the date of his second amended complaint, had responded to—but not yet resolved—his grievance about the incident. (*Id.* at PageID 235-37.)

"[M]ail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003). Mathias, however, does not allege that any of the named Defendants actually opened his mail. He alleges only that he received opened legal mail from the delivery person at the jail and that Defendant Saffell had not yet resolved his related grievance when the amended complaint was filed. Mathias must exhaust that grievance procedure before he may seek monetary damages in this Court for the claim regarding his legal mail. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); 42 U.S.C. § 1997e(a). To the extent Mathias seeks injunctive relief on this claim, his claim is moot because he is no longer confined at GCCC, the institution he alleges opened his mail outside his presence. *Kensu*, 87 F.3d at 175.

*Strip Searches*

Mathias alleges that GCCC unreasonably strip-searches the inmates up to five times per week when any inmate is suspected of smoking tobacco or some other minor infraction. (ECF No. 32 at PageID 222-23.) He states that on one occasion an officer observed one inmate tattooing another and, consequently, the officers strip-searched 28 total inmates. (*Id.* at PageID 224.) Mathias also alleges that female employees of the jail "will be able to see strip searches" depending on where in the jail they work. (*Id.* at PageID 245.)

As with Mathias's claim regarding the opening of outgoing mail, he lacks standing to sue on behalf of any inmate but himself. Mathias's only allegation pertaining to a search he personally endured is that he "was strip-searched 3 times within a week for tobacco and tattoing [sic] equipment." (ECF No. 32 at PageID 223.)

"[A] strip search, by its very nature, constitutes an extreme intrusion upon personal privacy." *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013) (quotation omitted). Nevertheless, "[s]trip searches are not per se unconstitutional under the Fourth Amendment." *Long v. Henry Cnty. Jail*, No. 117CV01141JDBCGC, 2018 WL 4839088, at *2 (W.D. Tenn. Oct. 4, 2018); *see Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010). To determine if the strip search in question was unreasonable under the Fourth Amendment, the Court must balance "the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "[A] regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Florence v. Bd. of Chosen Freeholders of City. of Burlington*, 566 U.S. 318, 326 (2012) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Though in some cases three strip searches over the course of one week could be constitutionally intolerable, Mathias has failed to allege how any Defendant in this matter actually violated his rights. He does not allege any specific unreasonable action—or any action at all related to the strip searches—by any named Defendant during the searches in which he was involved. He acknowledges the searches were not random but were in response to a belief that an inmate or inmates had contraband. He also does not allege that he personally was viewed during a strip search by a female officer; he says only that female employees *may* be able to see searches depending on where in the facility they are working. Though Mathias says he has experienced these searches on more than one occasion, he does not allege there is a policy or custom in place that requires or encourages large-scale searches at GCCC. *See Jackson v. Herrington*, 393 F. App'x 348, 355 (6th Cir. 2010) (citing *Swint v. Chambers County Comm'n*, 514 U.S. 35, 43 (1995)).

*Discrimination*

Mathias makes another general claim that GCCC's method of determining which inmates are given jobs, which allows them to receive sentence reduction credits, is discriminatory and constitutes a form of punishment because it is not "1st come, 1st to get a job." (ECF No. 32 at PageID 226-27.) Instead, inmates allegedly are handpicked "with no concern for how long they have been waiting for a job." (*Id.* at PageID 227.) But once again, Mathias seeks relief for other inmates, for whom he lacks standing to sue. This claim appears left over from the original complaint and does not include allegations of any injury to Mathias. He does not allege he personally was affected by any such policy and, instead, seeks relief for the three Plaintiffs no longer involved in this case. (*Id.* at PageID 230-31.) He therefore does not state a claim for relief.

*Forced Violation of Jail Policy*

Mathias next claims Defendant Saffell ordered him to violate jail policy by undressing to his underwear and standing in an area of the jail where inmates must be fully dressed. (ECF No. 32 at PageID 242.) While he and approximately 25 other inmates stood "semi-nude," a female officer photographed the inmates' bodies and tattoos. (*Id.* at PageID 243.) Mathias filed a complaint against Defendant Saffell, and the Chief Deputy responded that Defendant Saffell's actions did violate jail policy. (*Id.* at PageID 244.) Mathias heard nothing further from the complaint but was moved to a different pod within the jail. (*Id.*)

In this claim, Mathias alleges no constitutional violation. There is no constitutional right not to be photographed while an inmate. Even if Defendant Saffell's actions did lead to Mathias violating jail policy, Mathias alleges no injury because he was not disciplined for this "forced" violation, and jail officials answered his complaint against staff. This claim is frivolous.

*Exposure While Showering*

Mathias alleges that when he previously was housed at GCCC, he and the other inmates of J-pod were forced to shower in view of female and male corrections officers and other inmates in the pod. (ECF No. 37-1 at PageID 272.) He states he filed complaints about the matter and was "retaliated against and moved to a different pod" by Defendant Saffell. (*Id.*) Being moved would seem to solve the problem; but when Mathias returned to GCCC in March 2017, he was re-housed in J-pod where the same problem continued. (*Id.* at PageID 275.)

Mathias alleges he was moved to C-Pod in retaliation for filing a complaint and grievance about having to shower in view of correctional officers. (*Id.* at PageID 272-73.) However, he does not allege facts suggesting the move to C-Pod was an "adverse action" that would support a claim for retaliation. With regard to *other* inmates who were threatened with being moved,

Mathias alleges these "other inmates were chilled of their first amendment rights by the threatening of moving them to pods where they have incompatibles or people that they cannot be around." (*Id.* at PageID 274.) He does not make any such allegation with regard to himself.

Mathias is no longer at GCCC and therefore is free of the alleged showering conditions. To the extent he sought an injunction against this practice, this claim is moot. *Kensu*, 87 F.3d at 175.

*Removal of Legal Book*

In his final claim, and the only one invoking Defendant Combs, Mathias alleges a sergeant took from him a legal book which had been previously approved and in his possession for ten months. (ECF No. 37-1 at PageID 276.) The sergeant gave the book to Defendant Combs, who told Mathias he could view it in the jail library. (*Id.* at PageID 277-78.) Mathias asserts Defendant Combs intentionally kept the book from him "to thwart Plaintiffs [sic] attempts to successfully pursue this lawsuit." (*Id.* at PageID 281.) Mathias also alleges in passing that Defendant Combs has denied his ability to obtain jail employment, which could shorten his sentence. (*Id.* at Page ID 283-84.)

As discussed above, Mathias does have a right to access the courts. But that does not mean he has a right to particular law books. *See Inmates, Washington Cnty. Jail v. England*, 516 F. Supp. 132, 143 (E.D. Tenn. 1980), *aff'd sub nom. Inmates of Washington Cnty. Jail v. England*, 659 F.2d 1081 (6th Cir. 1981); *Bounds*, 430 U.S. at 821. Moreover, Mathias seemingly retained access to the book in the library. He may have suffered some inconvenience by the taking of his book, but it cannot be said that Defendant Combs's actions deprived him meaningful access to the courts. Indeed, Mathias has since filed in this Court his supplement pleading containing the claim about his taken book. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (noting that, "to

state a claim for denial of meaningful access to the courts, however, plaintiffs must plead and prove prejudice stemming from the asserted violation").

Similarly, to the extent Mathias is asserting his legal book was removed in retaliation for filing this lawsuit, he fails to state a claim. The requirement that he view the book in the library rather than keeping it in his cell is not the type of "adverse action" that would support a First Amendment retaliation claim.

Nor does Mathias state a claim for hinderance of obtaining a job at GCCC. There is no constitutional right to prison employment or to a particular prison job. *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001) (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)). Moreover, the Tennessee statute allowing inmates to earn sentence credits through work specifically provides there is no right to those credits. Tenn. Code Ann. § 41-26-236(a)(2)(D). Therefore, Mathias has no liberty interest in a job that would give him the opportunity to earn additional sentence credits. *See Miller v. Campbell*, 108 F. Supp. 2d 960, 966 (W.D. Tenn. 2000); *see also Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992) (Ohio statute created no constitutionally protected interest in earning sentence reduction credits through work assignments).

For all the foregoing reasons, with the exception of Mathias's claim that Defendant Saffell filed a false disciplinary charge against him in retaliation for the filing of this lawsuit, the complaint is subject to dismissal in its entirety for failure to state a claim on which relief may be granted. Therefore, all other claims are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

It is ORDERED that the Clerk shall issue process for Defendant David Saffell and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Saffell pursuant

to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Mathias shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendant Saffell. Mathias shall make a certificate of service on every document filed. Mathias shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[3]

Mathias shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[3] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.